**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| ELIZABETH D. BLALOCK and STACEY D. MILLER, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CASEY'S GENERAL STORES, INC.<br><br>Defendant. | Civil Action No.: 4:25-cv-00113-SMR-SBJ<br><br><br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Elizabeth Blalock and Stacey Miller, individually and on behalf of the Class defined below of similarly situated persons, alleges the following against Casey's General Stores, Inc. ("Casey's" or "Defendant") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**NATURE OF THE ACTION**

1.      It is both unfair and unlawful for entities like Casey's to impose discriminatory and punitive health insurance surcharges on employees who use tobacco products. This lawsuit challenges Casey's unlawful practice of charging a "tobacco surcharge" without complying with the regulatory requirements under the Employee Retirement Income Security Act of 1974 ("ERISA"). Under ERISA, wellness programs must offer, and provide notice of, a reasonable alternative standard that allows all participants to obtain the "***full reward***"—including refunds for surcharges paid while completing the program. 29 U.S.C. § 1182(b)(2)(B); 42 U.S.C. § 300gg-4(j)(3)(D). Instead, under the Casey's Employee Health Care Benefit Plan (the "Plan"), Casey's

1

imposes a discriminatory tobacco surcharge without providing participants with a reasonable alternative standard and fails to provide notice of the availability of a reasonable alternative standard, violating federal regulations and depriving employees of benefits to which they are entitled under ERISA.

2.    Tobacco surcharges have become more prevalent in recent years but to be lawful plans can impose these surcharges only in connection with *compliant* "wellness programs," meaning they must adhere to strict rules set forth by ERISA and the implementing regulations established by the Departments of Labor, Health and Human Services, and the Treasury (collectively, the "Departments") over ten years ago in 2014. ERISA imbues the Departments with the authority to promulgate regulations interpreting ERISA § 702, 29 U.S.C. § 1182, the statute's non-discrimination provision. Accordingly, the Departments have issued clear regulatory criteria that "must be satisfied" to qualify for the statutory exception or safe-harbor, which employers can invoke only if they affirmatively demonstrate full compliance with all these strict requirements in response to claims that their program is discriminatory. Moreover, courts must defer to the agency's interpretation of its own regulations, if that interpretation is neither plainly erroneous nor inconsistent with the regulatory framework, *Auer v. Robbins*, 519 U.S. 452 (1997), ensuring that plans cannot evade ERISA's anti-discrimination protections by selectively or improperly applying these rules.

3.    The strict regulatory requirements are meant to ensure that wellness programs actually promote health and preclude discrimination, instead of these programs being a "subterfuge for discriminating based on a health factor." The regulations make clear that for plans to be compliant, they must provide a clearly defined, reasonable alternative standard that allows all participants to obtain the full reward, including retroactive refunds of surcharges paid while

completing the alternative standard. A wellness program must be genuinely designed to improve health or prevent disease, rather than functioning as an improper penalty imposed on certain participants under the guise of a health initiative. Casey's Plan fails to clearly establish a reasonable alternative standard, does not notify employees that such an alternative is available, does not ensure that employees who complete the alternative receive the "full reward," and unlawfully shifts costs onto employees in violation of ERISA's wellness program regulations.

4.    The need for regulatory safeguards surrounding these types of wellness programs is underscored by studies showing little evidence that wellness programs effectively reduce healthcare costs through health improvement. Instead, the savings employers claim often result in cost-shifting onto employees with higher health risks, disproportionately burdening low-income and vulnerable workers who end up subsidizing their healthier colleagues.[1] The regulatory safeguards seek to prevent wellness programs from being misused as thinly veiled revenue-generating schemes at the expense of employees who are least able to afford the additional costs by shifting the burden to plan sponsors to demonstrate compliance once a participant alleges discriminatory surcharges. The goal is to ensure that wellness programs operate equitably and in a non-discriminatory manner, and to promote genuine health improvements

---

[1] Horwitz, J. R., Kelly, B. D., & DiNardo, J. E. (2013). *Wellness incentives in the workplace: Cost savings through cost shifting to unhealthy workers*. Health Affairs, 32(3), 468–476, 474 ("wellness programs may undermine laws meant to prevent discrimination on the basis of health status. Since racial minorities and people with low socioeconomic status are more likely than others to have more health risks, they are also more likely to be adversely affected by cost shifting"); *see also* Dorilas, E., Hill, S. C., & Pesko, M. F. (2022). *Tobacco surcharges associated with reduced ACA marketplace enrollment*. Health Affairs, 41(3), Abstract (finding that tobacco surcharges are significant barriers to affordable health insurance).

5.    Outcome-based programs,[2] such as smoking cessation programs, must offer a clearly defined "*reasonable* alternative standard," which is an alternative way for "all similarly situated individuals" to obtain the reward (or avoid a penalty) if they are unable to meet the initial wellness program standard (i.e., being tobacco-free). Critically, ERISA's implementing regulations require that "the *same*, *full reward*" must be provided to individuals who complete the alternative standard, regardless of when they do so during the plan year.[3] The Department of Labor ("DOL") has made clear that participants should not be forced to rush through the program under the threat of continued surcharges and that every individual participating in the program must receive the same reward as provided to non-smokers. *Id.* The Departments made this requirement clear when they stated it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual participating in the program*** should be able to receive ***the full amount of any reward or incentive*** . . . ." *Id.*, 33160 (emphasis added). Casey's violates these requirements by failing to provide a reasonable alternative standard that provides the "full reward" to employees who complete that standard, operating a non-compliant penalty structure rather than a lawful wellness incentive, and failing to clearly communicate the availability of a reasonable alternative standard in all plan materials referencing tobacco-related premium differentials,

---

[2] "An outcome-based wellness program is a type of health-contingent wellness program that requires an individual to attain or maintain a specific health outcome (such as not smoking or attaining certain results on biometric screenings) in order to obtain a reward." 29 C.F.R. § 2590.702(f)(1)(v).

[3] *Incentives for Nondiscriminatory Wellness Programs in Group Health Plans*, 78 Fed. Reg. 33158, 33163 (June 3, 2013) (hereinafter the "**Final Regulations**") ("while an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual*** as is provided to individuals who meet the initial standard for that plan year. (For example, if a calendar year plan offers a health-contingent wellness program with a premium discount and an individual who qualifies for a reasonable alternative standard satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.)" (emphasis added)).

including plan documents and summary plan descriptions ("SPDs"). *Id.* These failures constitute direct violations of ERISA's wellness program regulations.

6.     Casey's cannot qualify for the statutory safe harbor because the Plan fails to satisfy the essential regulatory criteria, which "must be satisfied," (*id*., 33160) for a wellness program to be lawful under ERISA. Final Regulations, 33160. The core deficiency of Casey's wellness program is that it does not offer a reasonable alternative standard that provides the "full reward" to all participants who satisfy the alternative standard, as explicitly required by Section 702 of ERISA, 29 U.S.C. § 1182, 42 U.S.C. § 300gg-4(j)(3)(D), and 29 C.F.R. § 2590.702(f)(4). The Plan fails to offer a clearly defined, reasonable alternative standard that ensures employees who satisfy that standard receive a full refund of the additional amounts they paid for being a tobacco user. Instead, Casey's retains these ill-gotten funds in its own accounts, earns interest on them, and therefore contributes less to the Plan. By failing to administer its surcharge program in compliance with ERISA's wellness regulations, Casey's cannot claim the protections of ERISA's safe harbor and is liable for its unlawful surcharge scheme.

7.     By failing to provide an alternative standard or a mechanism for retroactive reimbursement to those who satisfy that standard Casey's operates an unlawful surcharge program that denies employees who smoke the opportunity to avoid the penalty, as required by law. This is not a minor technical failure—it is a fundamental violation of the regulation's core purpose: ensuring that participants have an opportunity to avoid the smoking surcharge and receive the same financial benefit as those who meet the initial standard (i.e., non-smokers).

8.     Further, Casey's failed to provide notice. Casey's failed to include a description of the terms of an alternative standard and failed to include contact information for obtaining the alternative standard. Casey's failed to include reference to the wellness program in all plan

materials, despite the Departments' clear instructions that, for ERISA plans, wellness programs are required to be disclosed in these documents if compliance affects premiums. Final Regulations, 33166 ("a plan disclosure that references premium differential based on tobacco use . . . must include this disclosure"). These standalone violations disqualify Casey's from asserting the affirmative defense in response to the allegations herein that its tobacco surcharge program is discriminatory and violates ERISA. Upon information and belief, Casey's failed to include the required notice in all Plan/Benefits materials as required. Again, because Defendant's wellness program does not satisfy the necessary regulatory criteria for a "program[] of health promotion," Defendant's wellness program fails to qualify under the statutory safe harbor, meaning the tobacco surcharge it imposes on participants is unlawful and discriminatory in violation of ERISA.

9.      This Complaint alleges that Casey's imposes a discriminatory and unlawful tobacco surcharge. Casey's bears the burden of proving that its tobacco surcharge program fully complies with every regulatory requirement under ERISA and its implementing regulations, including providing a clearly defined, reasonable alternative standard that allows all participants to avoid the surcharge and receive a full refund if they satisfy the alternative. Casey's cannot meet this burden because its Plan does not appear to offer any alternative standard at all. Without a reasonable alternative standard, Casey's surcharge is not a lawful wellness incentive, but an impermissible penalty imposed on employees based on a health factor. Even if an alternative standard does exist, Casey's fails to provide clear notice of its availability in all plan materials discussing the surcharge. Its failure to offer and communicate a reasonable alternative standard makes its surcharge program facially unlawful under ERISA, and no amount of *post hoc* justifications can cure this fundamental defect. Casey's Plan is not a "program[] of health promotion or disease prevention" as required by

ERISA but instead an impermissible cost-shifting scheme that unlawfully penalizes employees for their health status.

10.     Plaintiffs are current and former employees of Casey's who paid, and continues to pay, the unlawful tobacco surcharges to maintain health insurance coverage under the Plan. This surcharge imposed an additional financial burden on Plaintiffs and continues to impose such a burden on those similarly situated.

11.     Plaintiffs bring this lawsuit individually and on behalf of all similarly situated Plan participants and beneficiaries, seeking to recover these unlawfully charged fees and for Plan-wide equitable relief to prevent Casey's from continuing to profit from its violations under 29 U.S.C. § 1109.  Under 29 U.S.C. § 1109, Defendant is a fiduciary of the Plan who has a legal obligation to act in the best interests of Plan participants and to comply with federal law. Plaintiffs, on behalf of themselves and the Plan as a whole, seek appropriate equitable relief under 29 U.S.C. §§ 1132(a)(2) and (a)(3) to address Defendant's ongoing violations of ERISA's anti-discrimination provisions.

**PARTIES**

12.     Plaintiff Elizabeth Blalock is, and at all times mentioned herein was, an individual citizen of the State of Missouri residing in the County of Carroll. Plaintiff Blalock is an employee of Casey's who pays a tobacco surcharge in the form of increased premiums for health insurance of roughly $35 per pay period (roughly $910 annually) offered through Casey's. Plaintiff Blalock was required to pay this tobacco surcharge to maintain health insurance under the Plan.

13.     Plaintiff Stacey Miller is, and at all times mentioned herein was, an individual citizen of the State of Louisiana residing in the Parish of Ouachita. Plaintiff Miller is a former employee of Casey's Marketing Company, a wholly owned subsidiary of Casey's, who paid a

tobacco surcharge in the form of increased premiums for health insurance of roughly $35 per pay period (roughly $910 annually) offered through Casey's. Plaintiff Miller was required to pay this tobacco surcharge to maintain health insurance under the Plan.

14.     Plaintiffs are participants in the Plan pursuant to 29 U.S.C. § 1002(7).

15.     Casey's is a leading chain of convenience stores headquartered in Ankeny, Iowa. Casey's, one of the largest convenience store chains in the U.S., operates over 2,600 locations across 16 states, offering fuel, groceries, and prepared foods such as pizza and baked goods.

16.     Casey's is the sponsor of the Plan and the Plan Administrator under 29 U.S.C. § 1002(16). Casey's employs thousands of individuals and there are over 18,000 participants in the Plan as of December 31, 2023. Casey's employee benefit plan is subject to the provisions and statutory requirements of ERISA pursuant to 29 U.S.C. § 1002(3).

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and § 28 U.S.C. 1331, as this suit seeks relief under ERISA, a federal statute. It also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 1,000, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

18.     This Court has personal jurisdiction over Defendant because it is headquartered in this District, and Defendant has purposefully availed itself of the privilege of conducting business in Iowa.

19.     Venue is proper in this District under 2 U.S.C. 1132§ (e)(2) because Defendant is headquartered in this District and this is a District in which Defendant may be found.

**FACTUAL BACKGROUND**

**I.   DEFENDANT'S TOBACCO SURCHARGE VIOLATES ERISA'S ANTI-DISCRIMINATION RULE**

**A.  Statutory and Regulatory Requirements**

20.     To expand access to affordable health insurance coverage, the Affordable Care Act ("ACA") amended ERISA to prohibit any health insurer or medical plan from discriminating against participants in providing coverage or charging premiums based on a "health-related factor," including tobacco use. Under this rule, a plan "may not require any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution that is greater than such premium or contribution for a similarly situated individual enrolled in the plan based on any health-related factor in relation to the individual or to an individual enrolled under the plan as a dependent of the individual." ERISA § 702(b)(1), 29 U.S.C. § 1182(b)(1).

21.     The statute permits group health plans to "establish[] premium discounts or rebates . . . in return for adherence to ***programs of health promotion and disease prevention***" (29 U.S.C. § 1182(b)(2)(B)(emphasis added)); however, these "wellness programs"—to qualify for this statutory safe-harbor exception—must strictly adhere to the mandated regulatory requirements.

22.     Under ERISA § 505, 29 U.S.C. § 1135, Congress granted the Department of Labor the authority to issue regulations, including the power to establish regulations prohibiting discrimination against participants and beneficiaries based on their health status under ERISA § 702, 29 U.S.C. § 1182. This authority empowers the Secretary of Labor (the "Secretary") to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of" Title I of ERISA. (29 U.S.C. § 1135). Furthermore, ERISA § 734, 29 U.S.C. § 1191c, explicitly reinforces the Secretary's authority to issue regulations concerning group health plan

requirements, which grants the power to "promulgate such regulations as may be necessary or appropriate to carry out the provisions" of ERISA Title I, Part 7. 29 U.S.C. § 1191c.

23.     Exercising this delegated authority, in 2006, the Secretary issued regulations through the notice-and-comment rulemaking process outlining the criteria that a wellness program must meet to qualify for the premium non-discrimination exception under ERISA § 702(b). *See* Final Regulations, 33158–59. Following the amendments by the Affordable Care Act ("ACA") and Public Health Service Act ("PHSA") in 2010, the Departments, published proposed regulations in November 2012 to "amend the 2006 regulations regarding nondiscriminatory wellness programs." *Id.*, 33159. These regulations (i.e., the Final Regulations) were approved and signed in 2013 to be effective January 1, 2014. *Id.*, 33158.

24.     The Final Regulations specify that health promotion or disease prevention programs, such as outcome-based wellness initiatives (i.e., smoking cessation programs), must meet detailed requirements to qualify for the safe harbor. As the Departments explained, these criteria "***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination based on health status." *Id.*, 33163. "That is," the Departments explained, "these rules set forth criteria for an ***affirmative defense*** that can be used by plans and issuers in response to a claim that the plan or issuer discriminated" against participants. *Id.* (emphasis added). That means once a participant alleges a discriminatory surcharge, the burden is on the employer to prove that it complied with *all* the necessary regulatory criteria and that the surcharge is non-discriminatory.

25.     Compliance with the regulatory criteria is not optional. These criteria serve as the standard by which these wellness programs can be evaluated and are the only lawful pathway for plans to impose health-based premium differentials without violating ERISA's anti-discrimination

provisions. *See* Final Regulations, 33160 ("***these [F]inal [R]egulations set forth criteria for a program of health promotion or disease prevention*** . . . that ***must be satisfied*** in order for the plan or issuer to qualify for an exception to the prohibition on discrimination . . . .") (emphases added).

26.    In satisfying each of the criteria, plans can ensure that wellness programs are "not a subterfuge for underwriting or reducing benefits based on health status." *Id.* They prevent employers from using surcharges as a revenue-generating mechanism dressed up as a program of health promotion. If a program fails to meet even one of these requirements, the program does not qualify as a "program[] of health promotion" and cannot qualify under ERISA's statutory carve-out. In that case, any premium differentials imposed based on a health factor violate the statute's anti-discrimination provisions. *See* § 2590.702(f)(4) (describing the "[r]equirements for outcome-based wellness programs," stating that a program "does not violate the provisions of this section ***only if all of the [] requirements are satisfied***.").[4] In sum, a wellness program that fails to satisfy each criterion is not a legitimate health promotion initiative but an unlawful penalty that discriminates based on health status, in direct violation of ERISA's protections.

### B. Regulatory Criteria

---

[4] Congress codified parts of the 2006 regulations regulatory criteria when, through the Patient Protection Act ("PPA") and ACA, it amended the PHSA, and incorporated (nearly verbatim) the regulatory language into ERISA. *See* 42 U.S.C. § 300gg-4(j)(3); 29 U.S.C. § 1185d(a)(1) ("[T]he provisions of part A of title XXVII of the [PHSA] [42 U.S.C. § 300gg *et seq.*] (as amended by the [PPA and ACA]) shall apply to group health plans, and health insurance issuers providing health insurance coverage in connection with group health plans, as if included in this subpart[.]"). Since then, the Departments have, in accordance with the they were granted, updated the regulatory framework through the Final Regulations, refining and clarifying the requirements to ensure compliance with ERISA's nondiscrimination provisions and the statutory criteria established by Congress. *See* 42 U.S.C. § 300gg-4(n) ("Nothing in this section shall be construed as prohibiting the Secretaries of Labor, Health and Human Services, or the Treasury from promulgating regulations in connection with this section"); *see also* 45 C.F.R. § 146.121(f) (adopting identical language to § 2590.702(f)).

27.    To comply with ERISA and avoid unlawful discriminatory surcharges, outcome-based wellness programs must meet the following five (5) criteria:

(a) Frequency of opportunity to qualify: Participants must be given at least one chance annually to qualify for the reward associated with the program to ensure ongoing accessibility and fairness. 29 C.F.R. § 2590.702(f)(4)(i).

(b) Size of reward: penalties or rewards cannot exceed 50% of the cost of employee-only coverage. § 2590.702(f)(4)(ii)

(c) Reasonable design: programs must be "reasonably designed" to promote health and cannot be "a subterfuge for discriminating based on a health factor." This determination is based on all the relevant facts and circumstances. "To ensure that an outcome-based wellness program is reasonably designed to improve health and does not act as a subterfuge for underwriting or reducing benefits based on a health factor, a reasonable alternative standard to qualify for the reward must be provided to any individual who does not meet the initial standard based on a measurement, test, or screening. . . ." § 2590.702(f)(4)(iii)).

(d) Uniform availability and reasonable alternative standards:  "The *full reward* under the outcome-based wellness program must be available to *all similarly situated individuals*."  29 C.F.R. § 2590.702(f)(4)(iv).

(e) Notice of availability of reasonable alternative standard: notice must include (a) instructions on how to access the reasonable alternative standard; (b) contact information for inquiries about the alternative standard; and (c) an explicit statement that participants' personal physician's recommendations will be accommodated. *See* § 2590.702(f)(4)(v).

28.     The Departments provided valuable insight into each of the criteria, reflecting their intent to operationalize the statute's protections in a manner that both promotes health and prevents discriminatory practices under ERISA.

29.     Regarding the first criteria, "the once-per-year requirement was included as a bright-line standard for determining the minimum frequency that is consistent with a reasonable design for promoting good health or preventing disease." Final Regulations, 33162. The once-per-year requirement ensures that participants have a meaningful opportunity to participate in a reasonable alternative standard.

30.     A key requirement of the fourth criterion for outcome-based programs is that the "full reward" must be available to "all similarly situated individuals[,]" regardless of when they meet the reasonable alternative standard during the plan year. *See* Final Regulations, 33165. Critically, the Departments clearly state that it is "[t]he intention of the Departments . . . that, regardless of the type of wellness program, ***every individual*** participating in the program should be able to receive the ***full amount of any reward or incentive*** . . . ." *Id.* (emphases added). While plans have flexibility in determining the manner in which they provide the "full reward," providing the "full reward" to every participant is ***mandatory***, regardless of when the participant satisfies the alternative standard. The Departments have made this clear:

> While an individual may take some time to request, establish, and satisfy a reasonable alternative standard, ***the same, full reward must be provided to that individual as is provided to individuals who meet the initial standard for that plan year***. (For example, if a calendar year plan offers a . . . premium discount and an individual . . . satisfies that alternative on April 1, the plan or issuer must provide the premium discounts for January, February, and March to that individual.) Plans and issuers have flexibility to determine ***how*** to provide the portion of the reward corresponding to the period before an alternative was satisfied (e.g., payment for the retroactive period or pro rata over the remainder of the year) ***as long as . . . the individual receives the full amount of the reward***.

Final Regulations, 33163 (emphases added).

31.    The Final Regulations provide an example of a non-compliant plan that imposes a tobacco use surcharge but does not facilitate the participant's enrollment in or participation in a smoking cessation program. *See id.*, Example 8. Instead, the employer advises the participant to find a program, pay for it, and provide a certificate of completion. *Id*. The Final Regulations conclude that the plan is not compliant because it "has not offered a reasonable alternative standard . . . and the program fails to satisfy the requirements of paragraph (f) of this section." *Id*.; Final Regulations, 33180.

32.    For health contingent wellness programs, the Final Regulations require the notice be disclosed "in ***all*** plan materials describing the terms of" the program. 29 C.F.R. § 2590.702(f)(3) and (4) (emphasis added); *see also* 42 U.S.C § 300gg-4(j)(3)(E). Further, the Final Regulations establish that "[f]or ERISA plans, wellness program terms (including the availability of any reasonable alternative standard) are generally required to be disclosed in the summary plan description (SPD), as well as in the applicable governing plan documents . . . if compliance with the wellness program affects premiums . . . under the terms of the plan." Final Regulations, 33166. Thus, plans that charge their participants more and fail to provide a reasonable alternative standard or the requisite notice violate these requirements, preventing these wellness programs from qualifying for the safe-harbor exception and establishing them as discriminatory wellness programs.

33.    Casey's tobacco surcharge is unlawful because it fails to comply with the Final Regulations governing wellness programs. As discussed, the Final Regulations provide that health-contingent wellness programs, such as those involving tobacco cessation programs, are permissible under ERISA ***only if all regulatory requirements are satisfied***. *See* 29 C.F.R. § 2590.702(f)(4).

14

34.     The Final Regulations provide clear examples of compliant and non-compliant tobacco surcharge programs. In Example 6, the group health plan imposes a tobacco use surcharge as part of its wellness program, but it remains compliant with ERISA regulations because it offers a reasonable alternative standard in the form of a smoking cessation program. Final Regulations, 33180. The hypothetical plan imposes a premium surcharge on tobacco users, which is determined annually based on a health risk assessment (i.e., participants self-identify as smokers). To avoid the surcharge, participants who use tobacco are not required to stop smoking entirely; instead, they can participate in a smoking cessation program offered by the plan. *Id.* The smoking cessation program is a "reasonable alternative standard" because it gives participants another way to avoid the surcharge, even if they are unable to quit smoking. *Id.*

35.     The plan facilitates participation in the alternative standard by ensuring the program is not unreasonably burdensome and is cost-free to participants. *Id.* Participants can avoid the surcharge simply by completing the smoking cessation program—they are not penalized for failing to quit smoking. *Id.*

36.     The hypothetical plan in Example 6 also meets the strict notice requirements under ERISA regulations because it clearly informs participants (a) about the availability of the alternative standard (i.e., the smoking cessation program), (b) how to access the program, including providing contact information, and (c) that the plan will accommodate recommendations from the participant's personal physician if the cessation program needs to be adjusted for medical reasons. *Id.*

37.     Further, the example provides that participants can qualify for the reward (or avoid the surcharge) at least once per year. *Id.* The tobacco surcharge described in Example 6 of the Final Regulations is permissible under ERISA because the program is reasonably designed to promote

health by offering tobacco users a legitimate alternative path to avoid the surcharge. The plan ensures the alternative standard is reasonable by providing access to the "full reward" for "all similarly situated individuals" and does not impose unnecessary burdens on participants. Further, the plan fully complies with the notice requirements by clearly disclosing the smoking cessation program, contact information, and the option for physician accommodations. The Final Regulations conclude that the premium differential is not discriminatory because the employer satisfies all the regulatory requirements under 29 C.F.R. § 2590.702(f)(4)(i), (iii), (iv), and (v) and avoids being classified as a discriminatory wellness program.

38.     Unlike Example 6 of the Final Regulations, Casey's does not provide participants with any reasonable alternative standard to avoid the tobacco surcharge it imposes on participants. There is no smoking cessation program, waiver, or alternative route for tobacco users to obtain the "full reward" (i.e., avoiding the surcharge). The only avenue for smokers to avoid the surcharge is to quit smoking and then submit that change in status to the benefits department. Thus, tobacco users are penalized based solely on their status as smokers, which violates ERISA's non-discrimination provisions.

39.     Casey's should have implemented a reasonable alternative standard in the form of a smoking cessation program that allowed users to avoid the surcharge for the entire plan year, regardless of whether they quit using tobacco. Casey's should have offered the program at no cost to participants and ensured that it was accessible and not overly burdensome by, for example, providing for convenient times and locations. Casey's should have ensured that the program provided those who completed it with the "full reward" through reimbursements or pro rata adjustments to insurance premiums. Casey's should have reviewed the terms of its surcharge program to ensure it complied with federal law.

16

40. Additionally, Casey's should have included clear and specific notice of the availability of the reasonable alternative standard in all Plan materials discussing the surcharge. That notice should have stated that an alternative standard (or waiver) was available, and Casey's should have provided the contact information for obtaining the alternative standard. Further, Casey's should have included a statement that the Plan would accommodate the recommendations of the participant's personal physician regarding the medical appropriateness of the alternative standard. Finally, Casey's should have regularly reviewed the communications provided to participants to ensure those communications continued to comply with federal law.

41. Casey's Plan materials—the Plan document, SPD, and, upon information and belief, the annual benefits guides—fail entirely to mention the availability of a reasonable alternative standard because no such alternative exists. Without this disclosure, participants are unaware of their rights under ERISA and cannot access alternative means to avoid the surcharge.

42. By failing to meet the regulatory requirements, Casey's tobacco surcharge is discriminatory, and in clear violation of ERISA and its implementing regulations.

43. Allowing companies like Casey's to exploit their participants and unlawfully extract millions from them under the guise of a wellness program that is, in reality, a cash grab, directly contradicts ERISA's purpose of protecting workers from health-based discrimination. If unchecked, this practice would permit employers to manipulate wellness programs as revenue-generating schemes rather than genuine health initiatives, shifting unjust financial burdens onto employee, and penalizing compliant employers for spending the time and money to ensure their programs complied.

## II.    DEFENDANT CANNOT AVAIL ITSELF OF ERISA'S SAFE HARBOR

44. Casey's tobacco surcharge program violates ERISA because it is not a "program[] of health promotion or disease prevention." 29 U.S.C. § 1182(b)(2)(B). To qualify for ERISA's safe harbor under § 1182(b)(2)(B), a wellness program must offer a clearly defined, reasonable

alternative standard and ensure that all participants who satisfy it receive the full reward. Casey's Plan fails to meet these requirements. It does not clearly offer an alternative standard at least once during the Plan year that provides the "full reward" and fails to provide proper notice of an alternative standard in all Plan materials discussing the premium differential.

45. Specifically, Casey's imposes a punitive $35 per paycheck surcharge based on tobacco use, as shown in the image below, which is from a benefit guide from 2023:

**Tobacco Surcharge and Spouse Eligibility**

**1. Take Action – Tobacco Surcharge**

Health Plan participants who use tobacco products are require to pay a surcharge. A charge of $35.00 per pay period for the team member and $35.00 per pay period for a covered spouse who uses tobacco will be added to your per pay period cost. All team members regardless of current tobacco status, will be defaulted to tobacco user, and will be required to go through the online enrollment system and complete the affidavit process in order to change your premium costs. Any covered team member who does not complete this process by the enrollment deadline will pay the tobacco surcharge throughout calendar year 2023.

46. As shown, Casey's unlawfully defaults all team members—regardless of their actual tobacco use status—to "tobacco user" status, automatically imposing the surcharge unless employees affirmatively complete an affidavit process through the online enrollment system. Any team member who fails to complete this process by the enrollment deadline is required to pay the surcharge for the entire calendar year, even if they do not use tobacco. Furthermore, Casey's fails to provide a reasonable alternative standard that allows participants to avoid the surcharge in compliance with 29 C.F.R. § 2590.702(f)(4). The surcharge is structured as a penalty rather than a legitimate wellness incentive, as employees who miss the enrollment deadline are penalized for the entire year without any opportunity to later demonstrate compliance or avoid the surcharge.

47. While it is unclear whether an alternative standard exists, failing to affirmatively provide one, as required under the Final Regulations (*see* 33163 "the final regulations direct that

18

an outcome-based wellness program *must provide a reasonable alternative standard* to qualify for the reward, for all individuals who do not meet the initial standard that is related to a health factor, in order to be reasonably designed") shifts the burden onto employees rather than making an alternative standard readily available, as required under 29 C.F.R. § 2590.702(f)(4)(iv)(A).

48.    Casey's also fails to ensure that all employees who complete an alternative standard receive the "full reward." By failing to clearly offer a reasonable alternative standard, Casey's surcharge program violates ERISA's regulatory framework. The Plan does not provide employees with at least one opportunity per year to qualify for an alternative standard, does not ensure that all similarly situated individuals who satisfy the alternative standard receive a full refund, and fails to provide clear notice of the alternative standard in all plan materials that reference the surcharge. These deficiencies make Casey's tobacco surcharge an impermissible cost-shifting scheme rather than a compliant health promotion program.

49.    During the course of their employment with Defendant, Plaintiffs paid this unlawful surcharge and some continue to pay it.

50.    ERISA's safe harbor protection applies only if every regulatory criterion is satisfied. Casey's numerous violations of the regulatory framework render it ineligible for safe harbor protection. *See* 29 C.F.R. § 2590.702(f)(4).

## CLASS DEFINITION AND ALLEGATIONS

51.    Plaintiffs bring this action individually and on behalf of all other similarly situated individuals, pursuant to Rule 23(b)(1), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

52.    Plaintiffs propose the following Class definition, subject to amendment as appropriate:

**Tobacco Surcharge Class**

All individuals residing in the U.S. who, from 2014 to the time of judgment, paid a tobacco surcharge in connection with their participation in a health or welfare plan offered by Defendant.

53.     Excluded from the Class are Casey's officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

54.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

55.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3).

56.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Class contains hundreds of participants who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

57.     **Commonality**. This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

   a. Whether Defendant's tobacco surcharge discriminates against participants based on a health status related factor;
   b. Whether Defendant offered an opportunity to satisfy an alternative standard at least once during each Plan year;
   c. Whether Defendant offers a reasonable alternative standard by which a participant could receive the "full reward" of the tobacco surcharge;
   d. Whether Defendant provided the proper notices of an alternative standard in all the plan materials describing the surcharge;
   e. Whether Defendant's tobacco surcharge program violates ERISA;
   f. Whether Defendant breached its fiduciary duties by collecting and retaining the tobacco surcharge;
   g. Whether Defendant breached its fiduciary duty by using the ill-gotten surcharge funds to offset Casey's contributions to the Plan;

20

h.  Whether Defendant breached its fiduciary duties by failing to periodically review the terms of its surcharge program to ensure compliance with ERISA and applicable regulations;

i.  The appropriate mechanisms to determine damages on a class-wide basis

58.    **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class members have been injured through the uniform misconduct described above and were charged improper and unlawful tobacco surcharges. Moreover, Plaintiffs' claims are typical of the Class members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

59.    **Adequacy of Representation**. Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs and members of the Class each participated in health and welfare plans offered by Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and discriminatory tobacco surcharges. Plaintiffs will fairly and adequately represent and protect the interests of the Class and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiffs.

60.    **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class members could afford such individualized litigation, the court

system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

61.     Plaintiffs seek injunctive, declaratory, and equitable relief on grounds generally applicable to the Class. Unless the Class is certified, Defendant will be allowed to profit from its unfair and discriminatory practices, while Plaintiffs and the members of the Class will have suffered damages. Unless Class-wide injunctions are issued, Defendant may continue to benefit from the violations alleged, and the members of the Class will continue to be unfairly treated.

## CAUSES OF ACTION

### COUNT I
### UNLAWFUL IMPOSITION OF A DISCRIMINATORY TOBACCO SURCHARGE
(Violation of 29 U.S.C. § 1182)

62.     Plaintiffs re-allege and incorporate herein by reference allegations 1–61 of this Complaint.

63.     Defendant unlawfully imposes a tobacco surcharge on all participants who use tobacco in violation of ERISA § 702. By imposing discriminatory monthly premium increases on participants and their family members who use tobacco, without complying with the regulatory requirements, Defendant is violating ERISA § 702(b), 29 U.S.C. § 1182(b)(1). This discrimination stems from Defendant's decision not to provide a reasonable alternative standard that ensures participants who satisfy that standard are provided with the full reward, in violation of ERISA and the Final Regulations.

64.    ERISA explicitly prohibits group health plans from requiring "any individual (as a condition of enrollment or continued enrollment under the plan) to pay a premium or contribution which is greater than such premium or contribution for a similarly situated individual enrolled in the plan on the basis of any health status-related factor." *See* 29 U.S.C. § 1182(b). Defendant's Plan violates this prohibition by failing to offer an opportunity to qualify for the alternative standard at least once a year; by failing to provide an alternative standard to avoid the surcharges; by failing to offer an alternative standard that provides those who satisfy it with the "full reward;" and by failing to provide proper notice of the alternative standard. Thus, Defendant's tobacco surcharge program fails to satisfy nearly all the regulatory requirements to qualify for the statutory safe-harbor.

65.    Defendant's imposition and administration of the tobacco surcharge violates ERISA § 702 by violating the implementing Final Regulations, including but not limited to 29 C.F.R. § 2590.702(f)(4) and 45 C.F.R. § 146.121(f)(4).

66.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: (A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan. *See* 29 U.S.C. § 1182(b). Because Defendant's surcharge program does not satisfy several of the criteria that plans must comply with to qualify as a compliant "program[] of health promotion and disease prevention," Defendant cannot qualify for the statutory safe-harbor and the tobacco surcharge is, therefore, unlawful and discriminatory. Plaintiffs and Class Members are entitled to relief under ERISA § 502(a)(3).

67.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate remedies to redress Defendant's violations of ERISA's anti-discrimination provisions outlined in § 1182(b) and § 300gg-4, including but not limited to injunctive relief, restitution, and any other relief necessary to remedy Defendant's unlawful conduct, as set forth in the Prayer for Relief.

**COUNT II**
**BREACH OF FIDUCIARY DUTY**
**(Violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104 and 1106)**

68.     Plaintiffs re-allege and incorporate herein by reference allegations 1–61 of this Complaint.

69.     ERISA requires a fiduciary to act "solely in the interest of participants," to do so with "the care, skill, prudence, and diligence" of a prudent person, "in accordance with the documents and instruments governing the plan," and to refrain from "deal[ing] with the assets of the plan" in the fiduciary's own interest. 29 U.S.C. §§ 1104(a)(1); 1106(b)(1). These duties of loyalty and prudence are the "highest known to the law" and require fiduciaries to have "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

70.     Instead of loyally and prudently acting in the best interests of Plan participants, Defendant chose to use Plan assets to exclusively benefit itself, to the detriment of the Plan and its participants, by unlawfully withholding substantial sums of money in tobacco surcharges from participants' paychecks and using these funds to offset its own obligations to contribute to the Plan.

71.     Each year, Defendant administered the Plan within the meaning of 29 U.S.C. § 1002(16) and was a fiduciary within the meaning of 29 U.S.C. § 1002(21), in that it exercised

24

discretionary authority and control respecting the management of the Plan and its surcharge program, including the decision not to offer a reasonable alternative standard. Each year, Defendant exercised discretionary authority with respect to the administration of the unlawful surcharge program by administering a surcharge program without providing reasonable alternatives that allowed "all similarly situated individuals" to avoid the surcharge for the entire plan year, dictated the eligibility criteria and penalties for tobacco use, failed to provide participants with the necessary notices, and failed to periodically review the terms of the surcharge program to ensure compliance with ERISA.

72.     Casey's controlled and disseminated to all employees the contents of Plan communications but failed to notify participants of a reasonable alternative standard by which they could avoid the entire year of surcharges regardless of when they satisfied the alternative standard in violation of the regulations. Further, Casey's failed to adequately and regularly review the terms of its tobacco wellness program and the accompanying communications to participants to ensure compliance with ERISA and the Final Regulations. Year after year, Defendant failed to properly institute safeguards against administering an unlawful program that violated the statute and shortchanged participants. These actions reflect Casey's active role in administering a non-compliant "program[] of health promotion and disease prevention," resulting in an unlawful and discriminatory tobacco surcharge in violation of ERISA.

73.     Casey's breached its fiduciary duties by administering a Plan that did not conform with ERISA's anti-discrimination requirements. Casey's acted disloyally by causing Plaintiffs and members of the Class to pay tobacco surcharges that were unlawful because those surcharges were associated with a non-compliant surcharge program.

74.     As a result of the imposition of the unlawful and discriminatory tobacco surcharges, Casey's enriched itself at the expense of the Plan, resulting in it receiving a windfall. Defendant breached its fiduciary duties by prioritizing its own financial interests over the interests of Plan's participants by deducting from participants' paychecks the amounts of the surcharges without providing an alternative avenue (aside from quitting tobacco) to avoid the surcharge. By administering the wellness program in a manner that prevented participants from having at least one opportunity to qualify for an alternative standard, precluded "all similarly situated individuals" from obtaining the "full reward," and by failing to adequately disclose participants' rights under tobacco wellness program, Casey's administered a program that disproportionately benefited itself at the expense of Plan participants. By collecting unlawful surcharges and using them to offset its own contributions to the Plan, Casey's was unjustly enriched at the expense of Plan participants. This is demonstrative of Casey's failure to act solely in the interests of participants and beneficiaries, in violation of ERISA's duty of loyalty under 29 U.S.C. § 1104(a)(1)(A).

75.     Further, by withholding unlawful tobacco surcharges from participants' paychecks and using those funds to reduce its own financial obligations to the Plan, Casey's caused the Plan to engage in transactions that constituted a direct or indirect exchange of Plan assets for the benefit of a party in interest—namely, itself—and improperly used Plan assets for its own financial advantage, in violation of 29 U.S.C. § 1106(a)(1). Casey's is a party in interest, as that term is defined under 29 U.S.C. § 1002(14), because it is both a Plan fiduciary and the employer of Plan participants.

76.     By retaining the amounts of the tobacco surcharges, Casey's increased its own monies, earned interest on that money, and saved the money it would have had to contribute to the Plan. In doing so, it dealt with Plan assets for its own benefit, in violation of ERISA § 406(b)(1),

29 U.S.C. § 1106(b)(1), which prohibits fiduciaries from engaging in self-dealing and using plan assets for their own benefit. By retaining the surcharges without providing participants with an avenue to earn the "full reward" to which they are entitled, Casey's improperly benefitted from a noncompliant tobacco surcharge program at the expense of Plan participants.

77.    Defendant breached its fiduciary duties by: failing to properly disclose material information about the wellness programs to participants, thereby misleading or depriving them of the ability to make informed decision; administering a wellness program that does not conform with ERISA's anti-discrimination provisions, in violation of ERISA § 404, 29 U.S.C. § 1104(a)(1)(D); acting on behalf of a party whose interests were averse to the interests of the Plan and the interests of its participants, in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(2); and by failing to act prudently and diligently to review the terms of the surcharge program (and the Plan) and Plan communications to ensure they properly complied with the regulatory requirements in violation of 29 U.S.C. § 1104(a)(1)(B). These breaches caused Plaintiffs and the Class to incur unlawful and discriminatory surcharges. Had Defendant conformed with its fiduciary duties under ERISA, it would have offered a complimentary, reasonable alternative standard, at least once each year, to all participants that used tobacco that enabled them to obtain the "full reward" regardless of when they satisfied that standard during the Plan year, would have provided participants with the necessary disclosures, would have reviewed the terms of the Plan and the surcharge program regularly to ensure they complied with ERISA, and would have ensured that any funds collected from the surcharge program went directly to the Plan and its participants.

78.    As a direct and proximate result of these fiduciary breaches, Plaintiffs and members of the Class collectively lost millions of dollars in the form of unlawful surcharges that were deducted from their paychecks.

79.     Plaintiffs are authorized to bring this action on a representative basis on behalf of the Plan pursuant to 29 U.S.C. § 1132(a)(2). Pursuant to 29 U.S.C. § 1109, Defendant is liable to: make good to the Plan all losses resulting from its breaches, including but not limited to any and all equitable and remedial relief as is proper, disgorge all unjust enrichment and ill-gotten profits, and to restore to the Plan or a constructive trust all profits acquired through its violations, as alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that judgment be entered against Defendant on all claims and requests that the Court awards the following relief:

A. An Order certifying this action as a class pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class representatives for the Class, and appointing the undersigned to act as Class Counsel;

B. A declaratory judgment stating that the unlawful and discriminatory tobacco surcharges imposed on participants violate ERISA's anti-discrimination provisions set forth in ERISA § 702, 29 U.S.C. § 1182;

C. An Order instructing Defendant to reimburse all persons who paid the unlawful and discriminatory surcharges;

D. A declaratory judgment stating that Defendant breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, *inter alia*, instituting a surcharge on participants without offering a reasonable alternative standard in violation of ERISA's anti-discrimination provisions and for failing to adequately monitor the terms of the Plan and surcharge program, as well as communications with participants, to ensure they complied with ERISA and the applicable regulations;

E. An Order requiring Defendant to provide an accounting of all prior payments of the surcharges under the Plan;

F. Declaratory and injunctive relief as necessary and appropriate, including enjoining Defendant from further violating the duties, responsibilities, and obligations imposed on it by ERISA with respect to the Plan and ordering Defendant to remit all previously collected surcharges;

G. Disgorgement of any benefits or profits Defendant received or enjoyed due to the violations of ERISA § 702, 29 U.S.C. § 1182(b);

H. Restitution of all surcharge amounts Defendant collected;

I. Surcharge from Defendant totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendant as a result of its collection of the unlawful and discriminatory tobacco surcharges;

J. Relief to the Plan from Defendant for its violations of ERISA § 404, 29 U.S.C. § 1104, under 29 U.S.C. § 1109, including a declaration that the tobacco surcharges are unlawful; restoration of losses to the Plan and its participants caused by Defendant's fiduciary violations; disgorgement of any benefits and profits Defendant received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to members who paid the surcharges; removal and replacement of the Plan's fiduciaries, and all appropriate injunctive relief, such as an Order requiring Defendant to stop imposing the unlawful and discriminatory surcharges on participants in the future.

K. An award of pre-judgment interest on any amounts awarded to Plaintiffs and the Class pursuant to law;

L. An award of Plaintiffs' attorneys' fees, expenses, and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine; and

M. Any other relief the Court determines is just and proper.

Dated: July 1, 2025                    Respectfully submitted,


By: */s/ Oren Faircloth*

**SIRI & GLIMSTAD LLP**

Oren Faircloth
(*pro hac vice*)
Kimberly Dodson
(*pro hac vice*)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: ofaircloth@sirillp.com
E: kdodson@sirillp.com

AND

**KOLEY JESSEN P.C., L.L.O.**

Adam J. Wachal, # AT0010448
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE  68124-1079
Phone: (402) 390-9500
Fax: (402) 390-9005
Adam.Wachal@koleyjessen.com

*Attorneys for Plaintiffs and the Proposed Class*